IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> MALLINCKRODT PLC, et al., <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-12522 (JTD) <br><br> (Jointly Administered) |
| sanofi-aventis U.S. LLC, <br><br> *Appellant*, <br><br> v. <br> Mallinckrodt, plc, et al., <br><br> *Appellees* | Civil Action No. 22-cv-00216 (TLA) <br><br> Bankruptcy Case No. 20-12522 (JTD) <br><br> Re: Dkt. Nos. 6, 10 |

**REPLY IN SUPPORT OF JOINT MOTION TO INTERVENE**

The Governmental Plaintiff Ad Hoc Committee, the Multi-State Governmental Entities Group (the "**MSGE Group**"), the Future Claimants' Representative (the "**FCR**"), and the Official Committee of Opioid Related Claimants (the "**OCC**") (together with the Governmental Plaintiff Ad Hoc Committee, the MSGE Group, and the FCR, the "**Proposed Intervenors**") hereby submit this reply in support of their joint motion to intervene (the "**Motion to Intervene**") [Dkt. No. 6] in the above-referenced bankruptcy appeal of the *Findings of Fact, Conclusions of Law, and Order Confirming Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Bankr. Dkt. No. 6660] (the "**Confirmation Order**") entered in the bankruptcy cases of Mallinckrodt plc and

13542291.v1

2

its affiliates (the "**Debtors**"), and in response to the *Objection and Reservation of Rights of Sanofi-Aventis U.S. LLC Regarding Joint Motion to Intervene* (the "**Objection**") [Dkt. No. 10].[1]

## REPLY

1.  The Appellant does not contest that the Proposed Intervenors, as opioid creditors or fiduciaries for opioid creditors, have a direct and substantial stake in the Opioid Settlement and in the Plan that implements that Opioid Settlement. Nor could they. The Opioid Settlement and the Plan settle trillions of dollars of opioid liabilities in exchange for $1.725 billion of cash to be paid over a period of 8 years and certain potentially valuable non-cash assets to be used to abate the catastrophic harm caused by the opioid pandemic and to compensate victims for their personal injuries. Indeed, the Appellant acknowledges that the Opioid Settlement is "clearly a critical component of the Joint Plan." Objection ¶ 19.

2.  Nor does the Appellant contest the fact that the Proposed Intervenors were active participants in the Plan confirmation proceedings below, having submitted written briefs, testimony and oral argument all in support of the Plan and the Confirmation Order that is the very subject of this appeal.

3.  Rather, the Appellant simply contends that it is not appealing any aspect of the Opioid Settlement or related provisions of the Plan. Objection ¶¶ 6, 11. The Appellant contends that it is only appealing the Confirmation Order as it relates to the allocation of the UCC Settlement (*id*. ¶ 9) and that the resolution of the Appeal will have no impact on the Opioid Settlement (*id*. ¶ 11.) The Appellant further asserts that it "does not challenge any aspect of the Opioid Settlement nor does it ask that any opioid-related provision of the Joint Plan be reversed, stayed or otherwise affected in any way." *Id.* ¶ 19.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Intervene or the Objection, as applicable.

4.      In fact, the Appellant sought a limited stay of the Confirmation Order pending appeal, seeking only to stay the initial distribution to Class 6 unsecured creditors. *See* [Dkt. No. 11] Ex. B ¶ 9 ("Sanofi does not seek to delay the Effective Date or any other multi-billion restructuring effectuated by the Plan").

5.      While the Proposed Intervenors are in concurrence with the effect on the Plan and the Opioid Settlement of the limited stay sought by Sanofi below, or rather lack of any effect, not all parties agree. The Official Committee of Unsecured Creditors (the "**UCC**") opposed the stay requested by the Appellant below on the basis that, among other things, such a stay could not be as limited as suggested by the Appellant. Rather, the UCC contended that the so-called "limited" stay would prevent the entire Plan, and as a result the Opioid Settlement (among other things), from going effective, thereby delaying the distribution of hundreds of millions of dollars earmarked to abate the opioid crisis and compensate victims. *See* Omnibus Objection of the Official Committee of Unsecured Creditors to Motions for Stay Pending Appeal [Bankr. Dkt. No. 6812] at ¶¶ 2, 31-37.[2]

6.      While the stay requested by the Appellant below was denied in an oral ruling, the Appellant has specifically reserved the right to seek a similar stay in this Appeal. Objection n.3. Likewise, the UCC has filed a motion to intervene in this Appeal. *See* Dkt. No. 5.

7.      As a result, it appears likely that (a) a stay of the Confirmation Order, similar to that sought below (or perhaps broader), will be sought by the Appellant in this Appeal and (b) the UCC will contend that such a stay would operate to stay the effectiveness of the entire Plan, including the Opioid Settlement. While the Proposed Intervenors believe any such contention by

---

[2] A copy of the UCC's objection to the Appellant's stay motion is attached hereto as Exhibit A. The UCC made similar arguments at the hearing on the Appellant's stay motion below. (*See* Hr'g. Tr. 30:6-33:25, Mar. 24, 2022, attached hereto as Exhibit B) ([UCC COUNSEL: "Thus, in effect this limited stay would really have a much broader effect and jeopardize the effective date of the plan as a whole.")

the UCC would be without merit, the Proposed Intervenors clearly have a significant interest in the resolution of, at the very least, that issue.

8.     If the UCC were correct, the stay sought by the Appellant below, if granted, would have caused immense harm to the Proposed Intervenors and their constituencies.  The Plan proposes to dedicate more than $1 billion to abatement of the opioid epidemic and compensation of personal injury claimants, beginning with $450 million to be paid on the effective date of the Plan.  Any stay that would delay the effectiveness of the Plan would delay the deployment of these funds (and subsequent distributions) indefinitely.  The effects of this delay would be devastating.  According to the Centers for Disease Control and Prevention, approximately 100,000 Americans die from opioid overdoses each year – which means that the number of people dying equates to a plane crash every day of every week of every month of every year.[3]  Indeed, in the recent *Purdue* chapter 11 cases, *In re Purdue Pharma L.P., et al*, Case No. 19-23649 (RDD), Bankr. S.D.N.Y., sworn declarations were provided by representatives of states, political subdivisions, and personal injury victims that explained in detail the harm that would be caused in that case if there were the imposition of a stay pending appeal – and this case would be no different.[4]  It is unconscionable that an individual commercial creditor seeking to increase its own recovery under the Plan could justify delaying the deployment of funds necessary to save lives and ease pain and suffering.

9.     To be clear, the Proposed Intervenors have no desire to intervene in this appeal for the purpose of being heard on issues that should have no impact on the interests of opioid creditors.

---

[3] Michael Van Schoik, *Mo. Attorney General discusses advances on $500 million opioid settlement, plus steps still needed to secure funding*, MSN News, Sept. 24, 2021, *available at*: https://www.msn.com/en-us/news/crime/ky3-exclusive-mo-attorney-general-discusses-advances-on-500-million-opioid-settlement-plus-steps-still-needed-to-secure-funding/ar-AAONmKf.

[4] *See Declaration of John M. Guard in Support of Ad Hoc Committee's Opposition to Motions for a Stay Pending Appeal*, *In re Purdue Pharma L.P., et al*, Case No. 19-23649 (RDD), Bankr. S.D.N.Y [Dkt. No. 4002] Ex. A; *Declaration of Jesse Delconte*, *id.* at [Dkt. No. 4015]; *Declaration of Colin Jorgensen*, *id.* at [Dkt. No. 4016]; *Declaration of Cheryl Juaire*, *id.* at [Dkt. No. 4007]; *Declaration of Kara Trainor in Support of the Opposition of the Official Committee of Unsecured Creditors to Motions for Stay Pending Appeal*, *id.* at [Dkt. No. 4008].

However, the Proposed Intervenors do not have a crystal ball.  They do not know whether issues may be raised, or relief may be requested, in this appeal that could have such an impact.  To the extent such issues are raised, the Proposed Intervenors should have an opportunity to appear and be heard.  However, Bankruptcy Rule 8013 requires that a party seeking to intervene in an appeal do so within 30 days of the appeal being docketed.  Bankr. Rule 8013(g).  As a result, the Proposed Intervenors did not (and do not) have the luxury to wait and see what issues may or may not arise in this appeal.  The Proposed Intervenors filed the Motion to Intervene within the 30 days required by Bankruptcy Rule 8013(g) to ensure themselves of the rights to appear and be heard on issues that could have an adverse effect on the interests of opioid creditors.

10. Despite the Appellant's assertions to the contrary, the Proposed Intervenors' interests would not be protected by permitting the Proposed Intervenors to submit amicus curiae briefs.  Objection ¶ 20-21.  As amici, the Proposed Intervenors would not be able to appeal an adverse ruling by this Court – precisely the outcome the Motion to Intervene is intended to prevent.

11. For the foregoing reasons, it is critical that the Proposed Intervenors be afforded the right to be heard on any matters that could delay, impede, or otherwise interfere with the Opioid Settlement.  The issue raised by the UCC in the Appellant's motion to stay below is simply one example of how the Proposed Intervenors' interests could be implicated by this Appeal.  The Appellant's Objection should be overruled, and the Motion to Intervene granted.

Dated: April 4, 2022

| | |
|---|---|
| **KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>Kenneth H. Eckstein, Esq.<br>Philip Bentley, Esq.<br>Daniel M. Eggermann, Esq.<br>Megan M. Wasson, Esq.<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Phone: (212) 715-9100<br>E-mail: keckstein@kramerlevin.com<br>E-mail: pbentley@kramerlevin.com<br>E-mail: deggermann@kramerlevin.com<br>E-mail: mwasson@kramerlevin.com | **MORRIS JAMES LLP**<br>*/s/ Jeffrey R. Waxman*<br>Jeffrey R. Waxman (Bar No. 4159)<br>Eric J. Monzo (Bar No. 5214)<br>Brya M. Keilson (Bar No. 4643)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Phone: (302) 888-6800<br>E-mail: Jwaxman@morrisjames.com<br>E-mail: Emonzo@morrisjames.com<br>E-mail: Bkeilson@morrisjames.com |
| **GILBERT LLP**<br>Scott D. Gilbert, Esq.<br>Kami E. Quinn, Esq.<br>Emily P. Grim Esq.<br>700 Pennsylvania Ave., SE<br>Suite 400<br>Washington, DC 20003<br>Phone: (202) 772-2200<br>E-mail: gilberts@gilbertlegal.com<br>E-mail: quinnk@gilbertlegal.com<br>E-mail: grime@gilbertlegal.com | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>7 Times Square<br>New York, NY 10036<br>Phone: (212) 209-4800<br>E-mail: dmolton@brownrudnick.com<br><br>Eric R. Goodman, Esq.<br>601 Thirteenth Street NW, Suite 600<br>Washington, DC 20005<br>Phone: (202) 536-1740<br>E-mail: egoodman@brownrudnick.com |

*Counsel for the Governmental Plaintiff Ad Hoc Committee*

13542291.v1

| | |
|---|---|
| **SEITZ, VAN OGTROP & GREEN, P.A.** | **CAPLIN & DRYSDALE, CHARTERED** |
| */s/ James S. Green, Jr.* | Kevin C. Maclay, Esq. (admitted pro hac vice) |
| R. Karl Hill (DE 2747) | Todd E. Phillips, Esq. (admitted pro hac vice) |
| James S. Green, Jr. (DE 4406) | Kevin M. Davis, Esq. (admitted pro hac vice) |
| 222 Delaware Avenue, Suite 1500 | George M. O'Connor, Esq. (admitted pro hac vice) |
| Wilmington, DE 19801 Tel: (302) 888-0600 | One Thomas Circle, NW, Suite 1100 |
| Fax: (302) 888-0606 E-mail: khill@svglaw.com E-mail: jsgreen@svglaw.com | Washington, D.C. 20005 |
| | Tel: (202) 862-5000 |
| | Fax: (202) 429-3301 |
| | E-mail: kmaclay@capdale.com |
| | E-mail: tphillips@capdale.com |
| | E-mail: kdavis@capdale.com |
| | E-mail: goconnor@capdale.com |
| | |
| | *Counsel to the Multi-State Governmental Entities Group* |

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **FRANKEL WYRON LLP** |
| */s/ James L. Patton, Jr.* | Richard H. Wyron |
| James L. Patton, Jr. (No. 2202) | 2101 L Street, NW, Suite 800 |
| Robert S. Brady (No. 2847) | Washington, DC 20037 |
| Edwin J. Harron (No. 3396) | Telephone: (202) 367-9127 |
| Jaime Luton Chapman (No. 4936) | Email: rwyron@frankelwyron.com |
| Rodney Square | |
| 1000 North King Street | |
| Wilmington, Delaware 19801 | *Counsel to the Future Claimants' Representative* |
| Telephone: (302) 571-6600 | |
| Facsimile: (302) 571-1253 | |
| E-mail: jpatton@ycst.com | |
| E-mail: rbrady@ycst.com | |
| E-mail: eharron@ycst.com | |
| E-mail: jchapman@ycst.com | |

13542291.v1

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| /s/  *Justin R. Alberto* | Arik Preis |
| Justin R. Alberto (No. 5126) | Mitchell P. Hurley |
| 500 Delaware Avenue, Suite 1410 | Sara L. Brauner |
| Wilmington, Delaware 19801 | Katherine Porter |
| Tel: (302) 655-5000 | Edan Lisovicz |
| Fax: (302) 658-6395 | One Bryant Park |
| jalberto@coleschotz.com | New York, New York 10036 |
| | Tel: (212) 872-1000 |
| | Fax: (212) 872-1002 |
| | apreis@akingump.com |
| | mhurley@akingump.com |
| | sbrauner@akingump.com |
| | kporter@akingump.com |
| | elisovicz@akingump.com |

*Counsel to the OCC*