No. 22-cv-00216-TLA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

In re MALLINCKRODT, PLC, et al., *Debtors*.[*]

SANOFI-AVENTIS U.S. LLC, *Appellant*,

v.

MALLINCKRODT, PLC, et al., *Appellees*.

On Appeal from the United States Bankruptcy Court
for the District of Delaware, No. 20-12522 (JTD)

## BRIEF OF DEBTORS-APPELLEES

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
collins@rlf.com
merchant@rlf.com
steele@rlf.com
schlauch@rlf.com

Melissa Arbus Sherry (*pro hac vice*)
James A. Tomberlin (*pro hac vice*)
Andrew Sorkin (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
melissa.sherry@lw.com
james.tomberlin@lw.com
andrew.sorkin@lw.com

*(additional counsel listed on inside cover)*

[*] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

George A. Davis (*pro hac vice*)
George Klidonas (*pro hac vice*)
Anupama Yerramalli (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200
george.davis@lw.com
george.klidonas@lw.com
anu.yerramalli@lw.com

Jeffrey E. Bjork (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
(213) 485-1234
jeff.bjork@lw.com

Jason B. Gott (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7700
jason.gott@lw.com

*Counsel for Debtors-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Mallinckrodt plc and its affiliates that are Debtors and Debtors-in-possession in the above-captioned chapter 11 proceedings (collectively, "Debtors"), by and through undersigned counsel, respectfully represent:

1.      Debtor-Appellee Mallinckrodt plc, chartered in Ireland, has no parent company, and no publicly held company owns 10% or more of Mallinckrodt plc. Mallinckrodt plc is publicly traded.

2.      Debtor-Appellee Acthar IP Unlimited Company, chartered in Ireland, is a wholly-owned subsidiary of Debtor Mallinckrodt Pharma IP Unlimited Company.

3.      Debtor-Appellee IMC Exploration Company, chartered in Maryland, is a wholly-owned subsidiary of Debtor ST US Holdings LLC.

4.      Debtor-Appellee Infacare Pharmaceutical Corporation, chartered in Delaware, is a wholly-owned subsidiary of Debtor Therakos, Inc.

5.      Debtor-Appellee INO Therapeutics LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Therakos, Inc.

6.      Debtor-Appellee Ludlow LLC, chartered in Massachusetts, is a wholly-owned subsidiary of Debtor MNK 2011 LLC.

7.      Debtor-Appellee MAK LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor MEH, Inc.

8.    Debtor-Appellee Mallinckrodt APAP LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor SpecGx LLC.

9.    Debtor-Appellee Mallinckrodt ARD Finance LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt Enterprises Holdings, Inc.

10.   Debtor-Appellee Mallinckrodt ARD Holdings Inc., chartered in Delaware, is a wholly-owned subsidiary of Debtor Therakos, Inc.

11.   Debtor-Appellee Mallinckrodt ARD Holdings Limited, chartered in the United Kingdom, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

12.   Debtor-Appellee Mallinckrodt ARD IP Unlimited Company, chartered in Ireland, is a wholly-owned subsidiary of Debtor Acthar IP Unlimited Co.

13.   Debtor-Appellee Mallinckrodt ARD LLC, chartered in California, is a wholly-owned subsidiary of Debtor Mallinckrodt ARD Holdings, Inc.

14.   Debtor-Appellee Mallinckrodt Brand Pharmaceuticals LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor ST US Holdings LLC.

15.   Debtor-Appellee Mallinckrodt Buckingham Unlimited Company is chartered in Ireland.  Half of Mallinckrodt Buckingham Unlimited Company is owned by Debtor Mallinckrodt Pharmaceuticals Limited, and the other half is owned by Debtor Mallinckrodt International Finance SA.

16.     Debtor-Appellee Mallinckrodt Canada ULC, chartered in Canada, is a wholly-owned subsidiary of non-Debtor Mallinckrodt Canada Cooperatie U.A.

17.     Debtor-Appellee Mallinckrodt CB LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

18.     Debtor-Appellee Mallinckrodt Critical Care Finance LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt ARD Holdings Inc.

19.     Debtor-Appellee Mallinckrodt Enterprises Holdings, Inc. is chartered in California.  Half of Mallinckrodt Enterprises Holdings, Inc., is owned by Debtor Petten Holdings Inc., and the other half is owned by Debtor MEH, Inc.

20.     Debtor-Appellee Mallinckrodt Enterprises LLC is chartered in Delaware.  Half of Mallinckrodt Enterprises LLC is owned by Debtor WebsterGx Holdco LLC, and the other half is owned by Debtor Mallinckrodt ARD Finance LLC.

21.     Debtor-Appellee Mallinckrodt Enterprises UK Limited, chartered is the United Kingdom, is a wholly-owned subsidiary of Debtor MUSHI UK Holdings Limited.

22.     Debtor-Appellee Mallinckrodt Equinox Finance LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Petten Holdings Inc.

23.     Debtor-Appellee    Mallinckrodt    Group    S.à    r.l.,    chartered    in Luxembourg, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

24.    Debtor-Appellee    Mallinckrodt    Holdings    GmbH,    chartered    in Switzerland, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

25.    Debtor-Appellee Mallinckrodt Hospital Products Inc., chartered in Delaware, is a wholly-owned subsidiary of Debtor MCCH LLC.

26.    Debtor-Appellee    Mallinckrodt    Hospital    Products    IP    Unlimited Company, chartered in Ireland, is a wholly-owned subsidiary of Debtor Mallinckrodt IP Unlimited Company.

27.    Debtor-Appellee Mallinckrodt International Finance SA, chartered in Luxembourg, is a wholly-owned subsidiary of Debtor Mallinckrodt plc.

28.    Debtor-Appellee Mallinckrodt International Holdings S.à r.l., chartered in Luxembourg, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

29.    Debtor-Appellee Mallinckrodt IP Unlimited Company, chartered in Ireland, is a wholly-owned subsidiary of Debtor Mallinckrodt Pharma IP Trading Unlimited Company.

30.     Debtor-Appellee Mallinckrodt LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt Enterprises LLC.

31.     Debtor-Appellee Mallinckrodt Lux IP S.à r.l., chartered in Luxembourg, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

32.     Debtor-Appellee Mallinckrodt Manufacturing LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt Hospital Products Inc.

33.     Debtor-Appellee Mallinckrodt Pharma IP Trading Unlimited Company, chartered in Ireland, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

34.     Debtor-Appellee Mallinckrodt Pharmaceuticals Ireland Limited, chartered in Ireland, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

35.     Debtor-Appellee Mallinckrodt Pharmaceuticals Limited, chartered in the United Kingdom, is a wholly-owned subsidiary of Debtor Mallinckrodt International Holdings S.à r.l.

36.     Debtor-Appellee Mallinckrodt Quincy S.à r.l., chartered in Luxembourg, is a wholly-owned subsidiary of Debtor Mallinckrodt Buckingham Unlimited Company.

37.     Debtor-Appellee Mallinckrodt UK Finance LLP is chartered in the United Kingdom.   Half of Mallinckrodt UK Finance LLP is owned by Debtor Mallinckrodt Pharmaceuticals Limited, and half is owned by Debtor Mallinckrodt International Finance SA.

38.     Debtor-Appellee Mallinckrodt UK Ltd, chartered in the United Kingdom, is a wholly-owned subsidiary of Debtor Mallinckrodt plc.

39.     Debtor-Appellee Mallinckrodt US Holdings LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor ST US Holdings LLC.

40.     Debtor-Appellee Mallinckrodt US Pool LLC, chartered in Nevada, is a wholly-owned subsidiary of Debtor Petten Holdings Inc.

41.     Debtor-Appellee Mallinckrodt Veterinary, Inc., chartered in Delaware, is a wholly-owned subsidiary of Debtor ST US Holdings LLC.

42.     Debtor-Appellee Mallinckrodt Windsor Ireland Finance Unlimited Company, chartered in Ireland, is a wholly-owned subsidiary of Debtor Mallinckrodt Windsor S.à r.l.

43.     Debtor-Appellee Mallinckrodt Windsor S.à r.l., chartered in Luxembourg, is a wholly-owned subsidiary of Debtor Mallinckrodt Quincy S.à r.l.

44.     Debtor-Appellee MCCH LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor MCCH LLC.

45.    Debtor-Appellee MEH, Inc., chartered in Nevada, is a wholly-owned subsidiary of Debtor Mallinckrodt International Finance SA.

46.    Debtor-Appellee MHP Finance LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt ARD Holdings Inc.

47.    Debtor-Appellee MKG Medical UK Ltd, chartered in the United Kingdom, is a wholly-owned subsidiary of Debtor Mallinckrodt Windsor S.à r.l.

48.    Debtor-Appellee MNK 2011 LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt Brand Pharmaceuticals LLC.

49.    Debtor-Appellee MUSHI UK Holdings Limited, chartered in the United Kingdom, is a wholly-owned subsidiary of Debtor Mallinckrodt ARD Holdings Limited.

50.    Debtor-Appellee Ocera Therapeutics, Inc., chartered in Delaware, is a wholly-owned subsidiary of Debtor MAK LLC.

51.    Debtor-Appellee Petten Holdings Inc., chartered in Delaware, is a wholly-owned subsidiary of ST US Holdings LLC.

52.    Debtor-Appellee SpecGx Holdings LLC, chartered in New York, is a wholly-owned subsidiary of Debtor Mallinckrodt LLC.

53.    Debtor-Appellee SpecGx LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor SpecGx Holdings LLC.

54.     Debtor-Appellee ST Operations LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor MEH, Inc.

55.     Debtor-Appellee ST Shared Services LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Petten Holdings, Inc.

56.     Debtor-Appellee ST US Holdings LLC, chartered in Nevada, is a wholly-owned subsidiary of Debtor MEH, Inc.

57.     Debtor-Appellee ST US Pool LLC, chartered in Delaware, chartered in Delaware, is a wholly-owned subsidiary of Debtor ST US Holdings LLC.

58.     Debtor-Appellee Stratatech Corporation, chartered in Delaware, is a wholly-owned subsidiary of Debtor Mallinckrodt Hospital Products Inc.

59.     Debtor-Appellee Sucampo Holdings Inc., chartered in Delaware, is a wholly-owned subsidiary of Debtor Sucampo Pharmaceuticals, LLC.

60.     Debtor-Appellee Sucampo Pharma Americas LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Sucampo Holdings Inc.

61.     Debtor-Appellee Sucampo Pharmaceuticals, LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor MEH, Inc.

62.     Debtor-Appellee Therakos, Inc., chartered in Florida, is a wholly-owned subsidiary of Debtor Mallinckrodt Hospital Products Inc.

63.     Debtor-Appellee Vtesse LLC, chartered in Delaware, is a wholly-owned subsidiary of Debtor Sucampo Pharmaceuticals, LLC.

64.     Debtor-Appellee WebsterGx Holdco LLC, chartered in New York, is a wholly-owned subsidiary of Debtor Mallinckrodt Enterprises Holdings, Inc.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

INTRODUCTION .............................................................................................1

STATEMENT OF THE ISSUES.......................................................................2

STATEMENT OF THE CASE...........................................................................2

    A.    Initiation Of The Bankruptcy Cases And Early Iterations Of Debtors' Plan.......................................................................................2

    B.    The UCC Settlement And Debtors' Amended Plan............................4

    C.    Sanofi's Claim And Amended Claim .................................................8

    D.    Confirmation Hearing.........................................................................9

    E.    Confirmation Of Debtors' Plan .........................................................11

    F.    This Appeal And Related Proceedings ..............................................12

SUMMARY OF THE ARGUMENT ..................................................................13

STANDARD OF REVIEW ...............................................................................15

ARGUMENT ....................................................................................................16

I.    The Plan Does Not Violate The Absolute Priority Rule ...........................16

    A.    Sanofi's Absolute Priority Rule Argument Rests On A Flawed Factual Premise .............................................................................17

    B.    The Vertical Gifting Cases Are Inapposite ......................................21

II.    Sanofi's Unfair Discrimination Argument Is Twice Forfeited ....................23

III.    The Validity Of Sanofi's Amended Claim Is Not Ripe For Appellate Review ........................................................................................................27

CONCLUSION.................................................................................................30

CERTIFICATE OF COMPLIANCE.................................................................32

CERTIFICATE OF SERVICE .........................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*In re Allegheny Int'l, Inc.*,
   954 F.2d 167 (3d Cir. 1992) ................................................................21

*In re Armstrong World Indus., Inc.*,
   348 B.R. 111 (D. Del. 2006)................................................................28

*In re Armstrong*,
   432 F.3d 507 (3d Cir. 2005) ..............................................14, 21, 22

*In re BDSD North America, Inc*.,
   634 F.3d 79 (2d Cir. 2011) ................................................................23

*In re Ben Franklin Hotel Assocs.*,
   186 F.3d 301 (3d Cir. 1999) ..............................................................29

*California v. Rooney*,
   483 U.S. 307 (1987)............................................................................28

*In re Culp*,
   545 B.R. 827 (D. Del. 2016)..............................................15, 16, 19

*In re Dr. R.C. Samanta Roy Institute of Sci. Tech. Inc.*,
   465 F. App'x 93 (3d Cir. 2011) .........................................................16

*Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*,
   57 F.3d 1215 (3d Cir. 1995) ..............................................................16

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*,
   751 F.3d 150 (3d Cir. 2014) ..............................................................26

*In re G-I Holdings, Inc.*,
   514 B.R. 720 (Bankr. D.N.J. 2014) ..................................................29

*Grogan v. Garner*,
   498 U.S. 279 (1991)............................................................................29

*Hodge v. Bluebeard's Castle, Inc.*,
   392 F. App'x 965 (3d Cir. 2010) .......................................................28

*L-3 Commc'ns Corp. v. Sony Corp.*,
    2014 WL 4674815 (D. Del. Sept. 12, 2014)......................................................25

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*,
    974 F.3d 386 (3d Cir. 2020) ..................................................................24

*Nichols v. City of Rehoboth Beach*,
    836 F.3d 275 (3d Cir. 2016) ..................................................................24

*In re Nuverra Environmental Solutions, Inc.*,
    590 B.R. 75 (D. Del. 2018)....................................................................22

*Prometheus Radio Project v. FCC*,
    824 F.3d 33 (3d Cir. 2016) ....................................................................24

*Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*,
    872 F.2d 36 (3d Cir. 1989) ....................................................................18

*Stevens, v. City of Oneonta*,
    No. 20-3672, 2021 WL 4472494 (2d Cir. Sept. 30, 2021)................................25

*In re Tribune Co.*,
    464 B.R. 126 (Bankr. D. Del. 2011)..........................................................29

*In re Tribune Co.*,
    972 F.3d 228 (3d Cir. 2020) ..............................................................22, 26

*United States v. Gypsum Co.*,
    333 U.S. 364 (1948)............................................................................16

*In re Weinberg*,
    197 F. App'x 182 (3d Cir. 2006) ............................................................24

*Wiggins v. Albert Einstein Med. Ctr.*,
    No. 20-3129, 2022 WL 1197015 (3d Cir. Apr. 22, 2022)..................................25

## STATUTES

11 U.S.C., ch. 11 ..................................................................................2, 9

11 U.S.C. § 1129(a)(8)..............................................................................27

11 U.S.C. § 1129(b)(2)................................................................................7

11 U.S.C. §§ 1129(b)(2)(B)(i)-(ii) ....................................................................17, 18

## INTRODUCTION

This appeal arises from the confirmation of a plan of reorganization that embodies years of negotiation, remarkable stakeholder consensus, and resolutions delivering billions of dollars to combat opioid abuse.  All of this was made possible by two years of virtually non-stop, good-faith negotiations among Debtors and hundreds of parties that were willing to come to the table and reconcile their diverging views on a wide range of high-stakes and complex issues.  This spirit of collaboration led to a series of highly interdependent settlements reached over time, with numerous parties making concessions for the benefit of others, which culminated in a Plan that was mostly consensual.  The Plan was (and still is) "supported by every estate fiduciary, almost every organized creditor group, and 88% of voting creditors."  APP1186.

Sanofi—a single, unsecured creditor—challenges one of the many, critical settlement agreements incorporated into the Plan.  Sanofi now stands alone in arguing that the Bankruptcy Court should not have confirmed the Plan because aspects of the settlement between Debtors and the unsecured creditors violate the Bankruptcy Code.  In a 98-page opinion, after a 16-day trial, the Bankruptcy Court disagreed.  Sanofi identifies no legal error.  Sanofi's arguments are foreclosed by the court's factual findings (which Sanofi does little to contest), a forfeiture problem, and an equally insurmountable ripeness bar.  This Court should affirm.

## STATEMENT OF THE ISSUES

1.     Whether the Bankruptcy Court clearly erred in finding that the Plan does not violate the absolute priority rule.

2.     Whether the Bankruptcy Court abused its discretion in finding that Sanofi forfeited its argument that the Plan unfairly discriminates between Class 6(f) and other Class 6 unsecured creditors.

3.     Whether Sanofi's challenge to the Bankruptcy Court's statement about the validity of an amended claim that had no impact on the Plan's confirmability and may still be allowed or disallowed is ripe for appeal.

## STATEMENT OF THE CASE

**A.     Initiation Of The Bankruptcy Cases And Early Iterations Of Debtors' Plan**

On October 12, 2020, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Bankr. D.I. 1, 2.[1]  Later that month, the United States Trustee appointed an official committee of unsecured creditors ("UCC"), and an official committee of opioid-related claimants ("OCC").  Bankr. D.I. 306, 308.

On April 20, 2021, Debtors filed an initial plan of reorganization (as amended, the "Plan").  Bankr. D.I. 2074; *see* Bankr. D.I. 2075 (initial Disclosure Statement).

---

[1] "Bankr. D.I." refers to the docket in the main Chapter 11 Case, Case No. 20-12522 (JTD). "D.I." refers to the docket in this appeal. "APP" refers to pages in Appellants' Appendix or Appellees' Supplemental Appendix.

That version of the Plan, like the version that was ultimately confirmed, divided creditors into classes.  As relevant here, "Guaranteed Unsecured Notes Claims" were in Class 5, "General Unsecured Claims" were in Class 6, and "Trade Claims" were in Class 7.  APP467, 472-73.  A revised version of the Plan further divided Class 6 into subclasses.  Bankr. D.I. 2770-1 at 52 (blackline comparison showing this change).  In the confirmed Plan, Class 6 is broken down into seven subclasses including Class 6(a) ("Acthar Claims"), Class 6(f) ("Other General Unsecured Claims"), and Class 6(g) ("4.75% Unsecured Notes Claims").  APP467, 473-75.[2]

The Plan covers more than 60 debtor entities and does not involve substantive consolidation.  APP184; *see* Bankr. D.I. 2074 at 1.  Creditors in the various classes hold claims against different Debtors.  *See id.*  Class 5 noteholders, for example, hold claims against "almost all debtors in the corporate structure," including "those entities with the greatest value."  APP184, 3634.  By contrast, "most of the claims within Class 6 are only held at one or two debtor entities."  APP186.  Sanofi holds Class 6(f) claims against Debtor Mallinckrodt Pharmaceuticals Ireland Limited ("MPIL").  APP114, 193.  And Class 6(g) noteholders, for their part, hold claims

---

[2] There were originally only six subclasses.  Bankr. D.I. 2770-1 at 52.  The seventh, Class 6(g) ("4.75% Unsecured Notes Claims"), was added later.  *See* Bankr. D.I. 4509 (blackline comparison showing addition of 6(g) in September 29, 2021 amended Plan).  That change is not relevant to this appeal.

3

against Debtor Mallinckrodt International Finance S.A. ("MIFSA"), MPIL's parent company, and against Debtor Mallinckrodt plc.  APP117-18, 3598.

Early versions of the Plan proposed to create a $100 million cash pool for Class 6, which would be divided pro rata among creditors in that class.  *See* APP1636; Bankr. D.I. 2767 at 31.  As explained in the solicitation version of the Disclosure Statement (distributed in June 2021), Debtors' "diligence and analysis prepared in early Q1 2021" showed that under "a strict application of the absolute priority rule"—and "in the absence of any of the settlements embodied in" a restructuring support agreement—creditors in Classes 6 and 7 "in the aggregate, would be entitled to approximately $34 million, as a midpoint."  Bankr. D.I. 2917, at 3.  "[B]y making available $150 million for these claimants"—including $100 million for Class 6 alone—the then-current version of the Plan "provide[d] such creditors with multiples more than their entitlements."  *Id.* at 3, 17.

### B.    The UCC Settlement And Debtors' Amended Plan

Following weeks of mediation with the UCC, Debtors entered into a settlement agreement with the unsecured creditors ("UCC Settlement").[3]  The UCC Settlement captured two significant changes to the distribution contemplated in earlier versions of the Plan:  (1) it increased the distributions to Class 6 unsecured

---

[3] The principal terms of the UCC Settlement are set out in the Mallinckrodt GUC Settlement Term Sheet.  APP1797-1809.

creditors from $100 million to $135 million plus certain non-cash assets; and (2) it allocated that consideration to the various Class 6 subclasses at each Debtor ("UCC Allocation"), rather than providing Class 6 unsecured creditors with their pro rata share of the pot without regard to the Debtor or Debtors at which such claims reside. APP109.

On September 29, 2021, Debtors filed an amended Plan that incorporated the UCC Settlement terms.   APP109; *see* APP1827-2013.   The settlement was conditioned on the UCC reaching internal agreement on the allocation of total consideration among the Class 6 subclasses, and a "UCC Appendix" to the amended Plan set forth the UCC's agreed-upon allocation. *See* APP 2003-11 (UCC Appendix, Exhibit 6 to First Amended Plan).  For purposes of mediation with Debtors, the UCC had prepared an internal creditor recovery model ("UCC Waterfall"), but—as the UCC later explained—"the UCC Waterfall Recoveries do not mirror recoveries to Holders of Class 6 Claims per the UCC Settlement" and as reflected in the Plan. APP2004-06 & n.3.

Before the deadline for objections, Sanofi was served with an expert report of Randall S. Eisenberg, the Managing Director of Debtors' restructuring consultant, and financial advisor, AlixPartners LLP.  APP3582-3792; *see* APP3527.  The report explained that, under the Plan, Class 5 creditors were receiving a higher percentage of recovery on their claims than Class 6 creditors because Class 5 creditors have

"approximately $1.5 billion of claims at more than 60 debtor entities, including those entities with the greatest value, such as the Debtor entities that own the IP," whereas "[m]ost other General Unsecured Claims are smaller in size and/or have claims at only one or two entities with little or no value available for distribution to unsecured creditors." APP3634. Accordingly, "under the absolute priority rule, holders of Class 5 Guaranteed Unsecured Notes Claims would be entitled to even higher recoveries than the Plan provides." APP3603-04. But to facilitate settlements and avoid litigation with claimholders in the other unsecured classes, Class 5 creditors agreed to "contribut[e] a portion of their Entitled Recovery to provide higher recoveries to the Class 6 General Unsecured Claims and Class 7 Trade Claims (relative to their respective baseline entitlements) as contemplated in the Plan." APP3603-04, 3634.

Eisenberg's report also included a waterfall recovery analysis (as updated, "Debtors' Waterfall") that assessed potential creditor recoveries at each Debtor under different scenarios as compared to the creditors' baseline recoveries. APP3623-27, 3766-85. As the report explained, Debtors' Waterfall scenarios demonstrated that each Class 6 subclass received more under the Plan than its baseline recovery would provide. APP3623-24.

On October 13, 2021, Sanofi filed a preliminary objection to the Plan. APP2014-38. Sanofi argued, among other things, that the Plan unfairly

6

discriminates between Class 6(f) and Class 7, and "does not satisfy the best interests of creditors test" because "[i]n a liquidation, Sanofi would receive more on account of its claims than the Debtors propose to pay under the Plan." APP2016, 2031-32.

On October 27, 2021, Debtors filed their confirmation brief. APP3150-3429. Debtors explained that Debtors' Waterfall scenarios showed "the recoveries that would result from allocating the Debtors' value to each Debtor and applying the absolute priority rule to that value at each Debtor, with classes of equal priority receiving pro rata distributions from that Debtor." APP3294-95. In each scenario, "Class 6's aggregate estimated recovery under the Plan . . . meaningfully exceeds its aggregate Entitled Recovery" as a result of the voluntary reallocation of recoveries by Class 5. APP3298.

On November 1, 2021, Sanofi filed a supplemental objection. APP3137-49. Sanofi argued, among other things, that the Plan violates the absolute priority rule in 11 U.S.C. § 1129(b)(2) because it would pay the equity holder of MPIL (*i.e.*, MIFSA) without MPIL's unsecured creditors receiving full payment. APP3147-48. Sanofi posited that the "UCC Settlement provides for equity to roll up to MIFSA from its subsidiaries, including [MPIL]," and argued that this meant the entitled recoveries of holders of Class 6 Claims against MPIL were being redistributed to "4.75% Unsecured Notes Claimholders [in Class 6(g)] (as MIFSA creditors via their equity interest in MIFSA subsidiary entities)." APP3147-38.

On November 17, 2021, Eisenberg filed a declaration in support of confirmation.  APP3522-3808.  Eisenberg included an updated waterfall analysis, which "show[ed] the natural recoveries that would flow to each class of creditors at each Debtor entity, *i.e.*, the recoveries that would result from allocating the Debtors' value to each Debtor and applying the absolute priority rule to that value at each Debtor, with classes of equal priority receiving pro rata distributions from that Debtor."  APP3556.  The waterfall analysis compared those baseline recoveries to the relevant class's estimated recoveries under the Plan.  *Id.*  And, as shown in that declaration, Class 5's reallocation (or "gift") to Class 6 of approximately $187 million of its recovery caused the total consideration being made available to Class 6 to increase from a baseline entitlement of approximately $23 million (as shown in Debtors' Waterfall) to an estimated $210 million.  APP3561, 3574; *see* APP186.

On December 3, 2021, Debtors filed a reply brief.  APP3430-3454.  Debtors explained that Sanofi's absolute priority argument rested on a false premise:  MIFSA was not receiving any recovery on account of its equity interest in MPIL, and the Class 5 recoveries that were gifted to Class 6(g) did not depend on Class 5's recoveries at MPIL.  APP3446.

### C.    Sanofi's Claim And Amended Claim

Meanwhile, on October 12, 2021, Sanofi had filed a motion regarding its claims against MPIL arising from a 2001 asset purchase agreement ("APA")

involving the transfer of intellectual property rights to Acthar® Gel.  APP1526-69

("APA Motion").  Sanofi sought a pre-confirmation determination that Debtors

could not reject their obligation to pay Sanofi royalties for sales relating to that

intellectual property—or, if the Debtors could reject such an obligation, they must

discontinue the sale of Acthar upon the rejection becoming effective.  *Id.*

On November 4, 2021, the Bankruptcy Court denied the APA Motion.  Bankr.

D.I. 5170; APP1570-83; *see* APP1584-85 (written order).  The court held that the

APA was not an executory agreement subject to rejection, and that breach of the

APA only results in prepetition damages that are subject to discharge in the Chapter

11 proceedings.  *Id.*  Sanofi appealed, and that appeal is currently pending in this

Court.  *See* Case No. 21-cv-01636-TLA (D. Del.).

On November 22, 2021, Sanofi filed an amended proof of claim against

MPIL.  APP1586-1600.  The amended claim was filed in middle of the confirmation

hearing, without leave of court, and nine months after the bar date had passed.

APP172 n.178; *see* APP1586-1600.

## D.    Confirmation Hearing

The Bankruptcy Court held a confirmation hearing on Debtors' amended Plan

over several weeks between November 2021 and January 2022.  APP232.  Debtors,

Sanofi, and others presented evidence and examined witnesses.  APP2044-2106,

2115-2306, 2313-2363, 2370-2492, 2497-2594.  Eisenberg testified and submitted

to cross-examination.  APP2044-2295.  He explained that Debtors' Waterfall was developed to determine baseline entitlements under the Plan and that—under each waterfall scenario—all the dissenting classes recover far more under the Plan than their baseline entitlement.  APP2091-2100, 2103.  Eisenberg and Stephen Welch (Debtors' Chief Transformation Officer) also testified that Class 5 was reallocating part of its recovery to Class 6.  APP2099-2101 (Eisenberg's testimony that "Class 6 and 7 are being trued up by contributions that are being made by the guaranteed unsecured notes, Class 5"); APP3925 (Dec. 7, 2021 Hr'g Tr. at 115:19-25) (Welch's testimony).  Eisenberg explained that the reallocated value from Class 5 was not dependent on any recoveries from MPIL, because "[t]here's plenty of other entities where the classified note holders received a recovery from" and those were the recoveries that "would be used to satisfy" the Class 6(g) recovery.  APP2138-39.

On January 4, 2022, in its closing argument, Sanofi argued—for the first time—that the Plan unfairly discriminates against Class 6(f) because there is disparate treatment among the Class 6 subclasses and Debtors failed to demonstrate that Class 6 was receiving a gift from Class 5.  APP2789-99, 2818-33; *see* APP2798 (conceding that Sanofi's filed objections asserted unfair discrimination only "between Class 6 and Class 7").  Both the UCC and Debtors objected.  APP2797-98 (UCC's counsel noting that it "would object to the introduction of any new unfair discrimination argument"); APP3023-24 (Debtors' counsel noting same).  In

response, the Bankruptcy Court said it would "hear the argument and . . . can determine later whether or not it's appropriate." APP2799. Sanofi admitted that it presented no evidence on the new argument, proceeded to focus primarily on other arguments, and spent less than a page of the transcript discussing any unfair discrimination vis-à-vis Class 6(g). APP2798-00, 2830-31.

Sanofi also argued, again for the first time, that the amended claim it filed after the Bankruptcy Court denied its APA Motion should be allowed, and that its allowance would cause the Plan to fail the best-interests test. APP2809-2818.

### E.   Confirmation Of Debtors' Plan

After considering the extensive evidence, the Bankruptcy Court overruled all of Sanofi's objections and held that the Plan would be confirmed subject to minor revisions. APP1-103 (Opinion dated February 3, 2022); *see* APP104-206 (Revised Opinion dated February 8, 2022).

On the absolute priority rule, the Bankruptcy Court rejected Sanofi's argument because it rested on a flawed factual assumption. As the court found, Debtors' Waterfall analysis showed that MIFSA was not receiving any recovery on account of its equity position in MPIL, and the reallocation of Class 5 recoveries that facilitated Class 6(g)'s recoveries was not dependent on recoveries at MPIL. APP192-94.

11

On unfair discrimination, the Bankruptcy Court held that Sanofi had forfeited the argument.  The court explained that, "[w]hile Sanofi made the argument during the Confirmation Hearing that its claims should be compared with Class 6(g), that argument was not included in Sanofi's objections and therefore need not be considered."  APP180 n.199.

The Bankruptcy Court also rejected Sanofi's best-interests challenge as it related to Sanofi's amended claim.  *First*, the court found that Sanofi forfeited this argument by failing to include in its objections and instead raising it for the first time in closing.  *Second*, the court noted that the amended proof of claim "is invalid, as it was filed long after the bar date (and after confirmation proceedings had begun) without leave of court."  And, *third*, the court concluded that allowing the claim would not affect the best-interests analysis in any event, as "the record reflects that even if Debtors had valued Sanofi's claim at something much closer to the amount Sanofi says is appropriate ($176 million), it is still receiving more under the Plan that it would in a liquidation."  APP172-73 n.178.

## F.    This Appeal And Related Proceedings

On February 17, 2022, Sanofi appealed.  APP634-846; *see* APP847-1488 (amended notice of appeal).  The next day, Debtors filed a Fourth Amended Plan with technical modifications.  Bankr. D.I. 6510.  And on March 2, 2022, the Bankruptcy Court entered an order confirming the Plan.  APP207-633.

Sanofi also filed a motion for stay pending appeal, as well as a motion for certification of a direct appeal. Bankr. D.I. 6685, 6686. A group of Class 6(a) creditors (the "Acthar Insurance Claimants" or "AIC") that had separately appealed did the same. Bankr. D.I. 6721, 6722. On March 24, 2022, the Bankruptcy Court denied the stay motions. Bankr. D.I. 6942 (Mar. 24, 2022 Hr'g Tr.), 7021 (written order). The court held that neither Sanofi nor the AIC had shown "a likelihood of success on the merits" or "established irreparable harm." Bankr. D.I. 6942 at 40:3-4. The court also declined to grant relief on Sanofi's certification motion. Bankr. D.I. 6942, 7021.

Sanofi and the AIC filed renewed stay motions in this Court, but declined to further pursue their certification requests. This Court denied a stay. *See* D.I. 41-42. On the same day Sanofi filed its opening brief, the AIC voluntarily dismissed their confirmation appeal. *See* Case No. 22-cv-00215-TLA (D. Del.), Dkt. 51-52.

## SUMMARY OF THE ARGUMENT

Sanofi argues the Plan should not have been confirmed because it violates the absolute priority rule and unfairly discriminates among similarly situated creditors. Sanofi also asks this Court to "reverse" the Bankruptcy Court's "statement" that Sanofi's amended claim was "invalid." OB5. Each argument fails.

*First*, Sanofi's absolute priority rule argument is premised on the assumption that MIFSA receives a distribution under the Plan based on its equity stake in MPIL.

13

This violates the absolute priority rule, Sanofi argues, because MPIL's equity holders cannot recover before MPIL's unsecured creditors recover in full. The problem with Sanofi's argument is that it runs directly counter to the Bankruptcy Court's factual findings. Based on extensive, unrebutted evidence, the Bankruptcy Court found that MIFSA does *not* receive any distribution on account of its equity position in MPIL under the Plan. MIFSA's creditors receive a distribution under the Plan only because the unsecured creditors in Class 5 reallocated a portion of their recovery to MIFSA's creditors—and Class 5 recovered more than enough from Debtors other than MPIL to make that gift. Sanofi does not and cannot establish that the Bankruptcy Court erred, let alone clearly erred, in making that finding.

Sanofi also says there is no gifting exception to the absolute priority rule. True, but irrelevant because the Bankruptcy Court did not rely on any gifting exception. *In re Armstrong*, 432 F.3d 507, 514 (3d Cir. 2005), involved a "vertical" gift at a single debtor. The Plan re-allocates entitlements by one group of creditors to creditors of a different debtor. And it does not skip over a dissenting class. The absolute priority rule simply is not implicated on these facts.

*Second*, Sanofi argues that the Plan unfairly discriminates among similarly situated creditors in Class 6. This argument is doubly forfeited. The Bankruptcy Court correctly declined to consider this argument because it was raised for the first time in Sanofi's closing argument at the confirmation hearing. And Sanofi

compounds that forfeiture by failing to argue on appeal that the Bankruptcy Court's ruling was wrong. Sanofi's unfair discrimination objection is not properly before this Court, and is unfounded in any event.

*Third*, and finally, Sanofi argues the Bankruptcy Court should not have said that an amended claim Sanofi filed without leave of court and over nine months after the applicable bar date had passed was invalid. But appellate courts review judgments, not statements in opinions. And Sanofi never asserts that the objected-to "statement" is cause to reverse the judgment. Nor could it. The Bankruptcy Court mentioned the claim's invalidity only in rejecting a "best interests of creditors" argument Sanofi made below—but does not raise on appeal. And the Bankruptcy Court had two other, independent grounds for rejecting that argument. The Bankruptcy Court also made clear in its order confirming the Plan that "[t]he rights of all parties are expressly reserved with respect to allowance or disallowance of Sanofi's claims." APP394. So while there are good reasons why Sanofi's amended claim may ultimately be disallowed, Sanofi remains free to argue otherwise. At this point, there simply is no issue ripe for appeal.

## STANDARD OF REVIEW

This Court "reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law." *In re Culp*, 545 B.R. 827, 837 (D. Del. 2016). A factual finding "is 'clearly erroneous' when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Gypsum Co.,* 333 U.S. 364, 395 (1948)).  That means that "[a] bankruptcy court's 'ultimate determination of fact' will not be set aside unless 'that determination is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *Id.* (quoting *In re Dr. R.C. Samanta Roy Institute of Sci. Tech. Inc.,* 465 F. App'x 93, 96 (3d Cir. 2011)); *see Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.,* 57 F.3d 1215, 1223 (3d Cir. 1995).

## ARGUMENT

## I.  THE PLAN DOES NOT VIOLATE THE ABSOLUTE PRIORITY RULE

Sanofi's primary argument on appeal is that the Bankruptcy Court committed "legal error" in confirming the Plan because "the UCC Allocation violates the absolute priority rule."  OB24, 28.  Sanofi's argument is premised on a factual assumption the Bankruptcy Court correctly rejected.  The court did not err in crediting Debtors' unrebutted waterfall scenarios.  And Sanofi's reliance on vertical gifting cases is misplaced since, as a matter of *fact*, there was no vertical gift.  Because Sanofi falls far short of establishing that the Bankruptcy Court's factual findings were clearly erroneous, and identifies no legal error, its absolute priority rule argument should be rejected.

### A.     Sanofi's Absolute Priority Rule Argument Rests On A Flawed Factual Premise

There is no dispute as to what the absolute priority rule requires.  As Sanofi concedes, the Bankruptcy Court "correctly" held that, "'under the absolute priority rule, equity holders cannot receive a distribution unless dissenting unsecured creditors receive payment in full or consent to such treatment.'"  OB26-27 (quoting APP193); *see* 11 U.S.C. §§ 1129(b)(2)(B)(i)-(ii).  Sanofi's argument is that the Bankruptcy Court misapplied that well-settled standard to "these facts."  OB28.  But the "facts" are those found by the Bankruptcy Court and, on the facts so found, there is no violation.

Sanofi's argument rests on the premise that the Plan "permits an equity distribution from [MPIL] to its parent, MIFSA," "without first ensuring that [MPIL]'s unsecured creditors are paid or provided for in full."  OB27-28.  If that were true, there would be an absolute priority problem.  But it is not true.  The Bankruptcy Court found that "the Plan does not provide for any equity distribution to MIFSA"; that "MPIL is not providing any recovery to MIFSA"; and that the only reason MIFSA's creditors (*i.e.*, Class 6(g)) are receiving a recovery is because of a gift from Class 5 that was not funded by MPIL either.  APP193-94.

The Bankruptcy Court's findings were supported by extensive record evidence.  The court's finding that "MPIL is not providing any recovery to MIFSA" under the Plan was based on "Debtors' Waterfall scenarios."  APP194; *see* APP185-

86 (discussing relevant "Waterfall Reorganization Scenario"). That unrebutted evidence showed that MIFSA is receiving no equity distribution and that MIFSA's creditors do not recover based on value being upstreamed from MPIL to MIFSA. *See* APP2137; *see also, e.g.*, APP194 ("Sanofi's expert witness . . . did not present an analysis sufficient to rebut" Eisenberg's testimony, based on Debtors' Waterfall, on these issues). MIFSA's creditors "are getting a recovery under the plan [only] because of the . . . gift that the classified Creditors [in Class 5] are providing to the Class 6 Creditors." *Id.* And the evidence demonstrated that Class 5's recoveries from entities other than MPIL are more than sufficient to cover that gift. *See* APP3563 (table showing over $1 billion in entitled recoveries even excluding recoveries from MPIL); APP2138-39 (testimony that the value reallocated to Class 6 from Class 5 is not dependent on any recoveries from MPIL because "[t]here's plenty of other entities where the classified note holders received a recovery from" and those recoveries "would be used to satisfy" the Class 6(g) recovery).

Sanofi does not dispute that—if these factual findings are correct—there is no absolute priority rule violation. Nor does Sanofi meaningfully contest the findings themselves. Sanofi does nothing to counter all of the evidence set forth above. And it does not engage with Debtors' Waterfall scenarios. Even if Sanofi had made such an argument, it would need to establish not just error, but clear error. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 43 (3d Cir. 1989)

(bankruptcy court's "account of evidence" presented is reviewed for clear error); *In re Culp*, 545 B.R. at 837.  It has not.  As it did throughout the stay proceedings, Sanofi simply ignores the demanding standard of review.  *See* D.I. 14, D.I. 19, at 17, D.I. 28; Bankr. D.I. 6685; Bankr. D.I. 6808 at 12.

Sanofi's only response is to argue the Bankruptcy Court should not have relied on Debtors' Waterfall scenarios in the first place.  OB22.  According to Sanofi, the Bankruptcy Court should have relied on the UCC Waterfall instead because "[t]he UCC Allocation is built on the UCC Waterfall."  OB29.  The UCC Waterfall, Sanofi says, does "permit[] an equity distribution from [MPIL] to its parent, MIFSA," OB28, which is what gives rise to a violation of the absolute priority rule.  The problem with Sanofi's argument is that only *the recoveries actually provided by the Plan* can violate the absolute priority rule.  Analytical components of the UCC's model that are not effectuated by the Plan and that reflected the UCC's *pre-settlement* views on a variety of disputed legal and factual issues resolved through the settlement cannot run afoul of that rule.  *See, e.g.*, APP2004-06 & n.3 ("[T]he UCC Waterfall Recoveries do not mirror recoveries to Holders of Class 6 Claims per the UCC Settlement.").

In that regard, Sanofi misunderstands the purpose and significance of the UCC Waterfall.  As the Bankruptcy Court recognized, the UCC Waterfall was prepared "for purposes of settlement negotiations with the Debtors as well as for use as a

reference point in preparing the UCC Allocation." APP171 n.173. That is all. And as the UCC itself has explained, "[i]n contrast to the Debtors' Waterfall, the UCC Waterfall does not purport to estimate recoveries after implementing [certain] settlements." APP3495; *see id.* (explaining that the difference is due to the fact that "the UCC developed its waterfall in the context of a dispute with the Debtors over how much value the [relevant] Settlement diverted from Class 6"). The two waterfalls thus "fundamentally . . model different things." APP3496. "Unlike the Debtors' waterfall, the UCC Waterfall cannot be used to show the value or the sources of the value available to unsecured creditors after implementation of the [relevant] Settlements as required by the Debtors' actual Amended Plan," because "[t]he UCC Waterfall was not designed to estimate those recoveries." APP3496.

Which is why the Bankruptcy Court was absolutely correct not to look to the UCC Waterfall to assess the factual underpinnings of Sanofi's absolute priority rule argument. In the words of the UCC itself (the author of the analysis that Sanofi tries to rely on), "[t]he purported equity 'roll-up' from [MPIL] to MIFSA to which Sanofi objects is a theoretical fiction that exists only within the UCC's waterfall analysis." *Id.* Nothing in the UCC Settlement, and so nothing that was actually incorporated into the Plan, "'provides for' a distribution of settlement consideration to equity in violation of the absolute priority rule." *Id.*

20

The Bankruptcy Court did not err—much less clearly err—in finding the absolute priority rule not implicated on these facts. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (even a "fact-finder's choice" between "two permissible views of the evidence" is not "clearly erroneous" (citation omitted)).[4]

## B. The Vertical Gifting Cases Are Inapposite

Sanofi also points to the Bankruptcy Court's discussion of the Class 5 "gift" and, citing *In re Armstrong*, 432 F.3d 507, 514 (3d Cir. 2005), argues "there is no 'gifting' exception to the absolute priority rule." OB29-31. That is surely true, but of no relevance here. The Bankruptcy Court did not apply a gifting exception to the absolute priority rule.

The Bankruptcy Court discussed the "gift" from one class of unsecured creditors (Class 5) to another (Class 6) to explain why the factual predicate of Sanofi's absolute priority rule argument was flawed. MIFSA's creditors (*i.e.*, Class 6(g)) are recovering *not* because of any equity roll up from MPIL to MIFSA, but because Class 5 agreed to forego a portion of its recovery from Debtors other than MPIL and reallocate it to Class 6 creditors. The Class 5 "gift" basically rebutted

---

[4] Sanofi also misunderstands the purpose and significance of the "safety valve" provision in the Plan. OB3. That provision enables distributions to Class 6 creditors to be altered if necessary to ensure compliance with the Bankruptcy Code. *See* APP473 (Plan, Art. III.B.6). The purpose was to ensure that allocation disputes, regardless of their merit, would neither threaten the viability of the rest of the Plan nor delay Debtors' emergence from bankruptcy.

Sanofi's theory that the recovery "must have" come from MPIL because if not from there, then where?  It was not an "exception" to the absolute priority rule; it showed why the absolute priority rule was not implicated in the first place.  *See* APP194.

Sanofi's reliance on *Armstrong* is thus misplaced.  As Sanofi acknowledges, *Armstrong* involved a gift from "a class of asbestos claimants" to "the debtor's equity holders," which "skip[ed] the general unsecured creditor class."  OB31 (citing 432 F.3d at 514).  That is, *Armstrong* involved a "vertical" gift at a single debtor.  The decision addressed only "situations where a senior class gave property to a class junior to the dissenting class."  *Armstrong*, 432 F.3d at 513.  It did not address a voluntary re-allocation of entitlements by one group of creditors (Class 5) to creditors of a different debtor (*e.g.*, MIFSA's Class 6(g) creditors).  And even if this dispute is viewed through the prism of single debtor, other Third Circuit precedent makes clear that the absolute priority rule is not implicated by gifts between unsecured creditors.  *See In re Tribune Co.*, 972 F.3d 228, 232, 283 (3d Cir. 2020) (the absolute priority rule "should be pictured vertically, as it regulates priority among classes of creditors having higher and lower priorities," and is "not in play [where a] dispute involves only unsecured creditors"); *see also In re Nuverra Environmental Solutions, Inc.*, 590 B.R. 75, 95 (D. Del. 2018) ("horizontal gifting

. . . does not violate the absolute priority rule"). Because this case does not involve a vertical gift as a matter of *fact*, *Armstrong* is of no help to Sanofi.[5]

## II. SANOFI'S UNFAIR DISCRIMINATION ARGUMENT IS TWICE FORFEITED

Sanofi next contends that the Bankruptcy Court committed "legal error" by confirming the Plan because the UCC Allocation "discriminates unfairly" against Class 6(f) relative to Class 6(g). OB32-36. Sanofi forfeited this argument by failing to timely raise it before the Bankruptcy Court. And it abandoned the argument on appeal by failing to challenge the Bankruptcy Court's forfeiture ruling. The Court should not address this twice forfeited argument, which lacks merit in any event.

Sanofi forfeited its unfair discrimination argument by failing to timely raise it below. Although Sanofi argued in its preliminary objection that the Plan unfairly discriminates between Class 6(f) and Class 7, Sanofi does not raise that argument on appeal. The argument that Sanofi raises instead—that the allocation of the UCC Settlement, which affects only Class 6 creditors, unfairly discriminates—is nowhere to be found in Sanofi's objections. *See* APP2014-38; APP3137-49; *see also* APP2798 (Sanofi's counsel conceding this). The Bankruptcy Court thus held that "[w]hile Sanofi made the argument during the Confirmation Hearing that its claims

---

[5] Sanofi also cites *In re BDSD North America, Inc*., 634 F.3d 79, 99 (2d Cir. 2011). OB32 n.81. But that case, like *Armstrong*, involved a plan in which "senior lenders" gifted property "to prior shareholders while intermediate lenders receive[d] less than the value of their claim." 634 F.3d at 99. Thus, it too is inapposite.

should be compared with Class 6(g), that argument was not included in Sanofi's objections and therefore need not be considered." APP180 n.199. That ruling is correct, and certainly not an abuse of discretion. *See In re Weinberg*, 197 F. App'x 182, 187 (3d Cir. 2006) (waiver determinations are reviewed for abuse of discretion).

Sanofi's opening brief compounds its forfeiture problem by failing to argue that the Bankruptcy Court's ruling was wrong. Sanofi acknowledges that "[w]ith respect to unfair discrimination, the Bankruptcy Court did not consider Sanofi's objection" because Sanofi failed to include that argument in its objections. OB22 (quoting APP180) (alteration in original). But Sanofi never argues the Bankruptcy Court was wrong for so ruling. The closest Sanofi comes is to claim, in a footnote, that "[t]he Bankruptcy Court did not cite any authority for this conclusion." OB36 n.92. That is woefully insufficient to press the issue on appeal for several reasons.

For one thing, arguments raised in a footnote are considered waived. *See Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 282 (3d Cir. 2016) (finding waiver of argument "developed only in a footnote with a brief citation to authority"); *Prometheus Radio Project v. FCC*, 824 F.3d 33, 53 (3d Cir. 2016). For another, Sanofi's single-sentence critique is misleading. In holding that Sanofi had forfeited another argument for the same reason, the Bankruptcy Court cited several cases in support of that black-letter law proposition. APP172 n.178 (citing *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406

n.13 (3d Cir. 2020) (concluding that when a party first raised an issue at oral argument, it is too late for the court to consider it); *L-3 Commc'ns Corp. v. Sony Corp.*, 2014 WL 4674815, at *3 (D. Del. Sept. 12, 2014) (stating that an argument raised for the first time during oral argument is waived)).

Finally, even Sanofi's lone footnote does not say the Bankruptcy Court got it wrong.  Sanofi does not argue that it raised unfair discrimination vis-à-vis Class 6(g) at any point before closing argument at the confirmation hearing.  It did not.  Sanofi does not dispute that it could have raised such an argument earlier.  And it could have; Eisenberg's Report, Debtors' confirmation briefing, and the fact that the AIC *did* raise this argument (as to Class 6(a)) before confirmation prove as much. Because the Bankruptcy Court's forfeiture ruling stands unchallenged on appeal, the underlying merits of the unfair discrimination argument are not properly before the Court.  *See, e.g.*, *Stevens, v. City of Oneonta*, No. 20-3672, 2021 WL 4472494, at *2 (2d Cir. Sept. 30, 2021) (affirming judgment based on "waive[r]" of "dispositive issues" because appellant's "opening brief fails to address the bases for the district court's" ruling); *Wiggins v. Albert Einstein Med. Ctr.*, No. 20-3129, 2022

WL 1197015, at *1 n.2 (3d Cir. Apr. 22, 2022) (affirmance warranted where appellant "has not challenged . . . independently dispositive ruling[]").[6]

In any event, the unfair discrimination arguments Sanofi tries to raise are unavailing. This is a case where a "class-to-class comparison is difficult," *In re Tribune Co.*, 972 F.3d at 244, because "there are more than 60 debtor entities with a complex financial structure, creditors that have claims against different debtor entities, and there is no substantive consolidation," APP184. Sanofi's arguments are again premised on the faulty idea that the UCC Waterfall demonstrates the actual entitlements of creditors, which the UCC itself has disclaimed. *See* OB34-35. And Sanofi simply ignores Debtors' Waterfall scenarios, which show that all the dissenting classes will recover far more under the Plan than their baseline entitlement. APP2091-2100, 2103; *see also* APP184-92 (Bankruptcy Court analyzing and relying on Debtors' Waterfall scenarios in rejecting other unfair discrimination arguments). Had the argument been presented, Sanofi would have been unable to point to evidence of harm. *See In re Tribune*, 972 F.3d at 242 (whether discrimination is unfair "is determined from the perspective of the

---

[6] To the extent Sanofi tries to challenge the Bankruptcy Court's forfeiture ruling on reply, it will be too late. *See, e.g., In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 158 (3d Cir. 2014) (declining to consider "reply brief arguments, which . . . are outside of anything addressed in the opening brief [and therefore] must be seen as waived").

dissenting class" and, in particular, whether the dissenting class was actually harmed by the alleged discrimination).

## III. THE VALIDITY OF SANOFI'S AMENDED CLAIM IS NOT RIPE FOR APPELLATE REVIEW

Sanofi finally asks this Court to "reverse" the Bankruptcy Court's "statement" that the untimely amended proof claim Sanofi filed was invalid. OB5. As Sanofi's framing suggests, this argument is not ripe for appellate review.

The "statement" Sanofi wants reversed is from a footnote in a portion of the Bankruptcy Court's confirmation opinion discussing the best-interests test in 11 U.S.C. § 1129(a)(8). *See* APP172 n.178. In closing arguments, Sanofi had argued that the size of its amended proof of claim would preclude the court from confirming the Plan. APP2809-18. The Bankruptcy Court rejected that argument for three independent reasons. *First*, Sanofi forfeited this argument by (again) failing to include in its objections and instead raising it for the first time in closing argument. APP172-73 n.178. *Second*, the amended proof of claim "is invalid, as it was filed long after the bar date (and after confirmation proceedings had begun) without leave of court." *Id.* And, *third*, allowing the claim would not affect the court's best-interests analysis, as "the record reflects that even if Debtors had valued Sanofi's claim at something much closer to the amount Sanofi says is appropriate ($176 million), it is still receiving more under the Plan that it would in a liquidation." *Id.*

27

Sanofi does not raise a best-interests argument on appeal. Instead, it takes issue with the second of three reasons why the best-interests argument failed to persuade below. But this Court reviews "judgments, not statements in opinions." *Hodge v. Bluebeard's Castle, Inc.*, 392 F. App'x 965, 977 (3d Cir. 2010) (quoting *California v. Rooney*, 483 U.S. 307, 310 (1987)). And Sanofi does not connect its critique of the Bankruptcy Court's "statement" to any reason why the Plan should not have been confirmed. So Sanofi's assertion that the Bankruptcy Court "should have . . . considered [the amended claim to be] allowed during the Confirmation trial," OB39, is not a reason to reverse the Confirmation Order.

Sanofi also argues that "this Court should hold that Sanofi's Amended Claim is not invalid, but is instead a *prima facie* valid claim." OB39. But that argument is not ripe for appeal. As Sanofi concedes, the Bankruptcy Court specifically held in the Confirmation Order that "[t]he rights of all parties are expressly reserved with respect to allowance or disallowance of Sanofi's claims." OB23 n.60 (quoting APP394). Sanofi faults Debtors for failing to object to that claim before the confirmation hearing. OB37. But Debtors had no reason to do so, given that all they sought to prove at confirmation was that the Plan should be confirmed, *i.e.*, that "the provisions of section 1129 of the Bankruptcy Code have been satisfied by a preponderance of the evidence." APP3186 (citing *In re Armstrong World Indus.,*

*Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In re Tribune Co.*, 464 B.R. 126, 151-52 (Bankr. D. Del. 2011); *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

Sanofi remains free to argue in subsequent proceedings that its amended claim should be allowed.  That argument will likely fail because, as the Bankruptcy Court noted, Sanofi filed the amended claim nine months after the bar date, in the middle of the confirmation hearing, without any notice and without seeking leave to amend. *See, e.g.*, *In re G-I Holdings, Inc.*, 514 B.R. 720, 754 (Bankr. D.N.J. 2014) ("A party seeking to amend its proof of claim after the bar date must obtain the court's permission to do so."); *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999) ("The decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court.").  But the critical point for present purposes is that Sanofi can argue otherwise.  The merits of those arguments are for another court—and another day.

## CONCLUSION

For the foregoing reasons, this Court should affirm.


June 8, 2022                                    Respectfully submitted,
Wilmington, Delaware

/s/ Michael J. Merchant                         Melissa Arbus Sherry (*pro hac vice*)
Mark D. Collins (No. 2981)                      James A. Tomberlin (*pro hac vice*)
Michael J. Merchant (No. 3854)                  Andrew Sorkin (*pro hac vice*)
Amanda R. Steele (No. 5530)                     **LATHAM & WATKINS LLP**
Brendan J. Schlauch (No. 6115)                  555 Eleventh Street, NW, Suite 1000
**RICHARDS, LAYTON & FINGER,**                  Washington, DC 20004
**P.A.**                                        (202) 637-2200
One Rodney Square                               melissa.sherry@lw.com
920 N. King Street                              james.tomberlin@lw.com
Wilmington, Delaware 19801                      andrew.sorkin@lw.com
(302) 651-7700
collins@rlf.com                                 George A. Davis (*pro hac vice*)
merchant@rlf.com                                George Klidonas (*pro hac vice*)
steele@rlf.com                                  Anupama Yerramalli (*pro hac vice*)
schlauch@rlf.com                                1271 Avenue of the Americas
                                                New York, New York 10020
                                                (212) 906-1200
                                                george.davis@lw.com
                                                george.klidonas@lw.com
                                                anu.yerramalli@lw.com

                                                Jeffrey E. Bjork (*pro hac vice*)
                                                355 South Grand Avenue, Suite 100
                                                Los Angeles, California 90071
                                                (213) 485-1234
                                                jeff.bjork@lw.com

Jason B. Gott (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7700
jason.gott@lw.com


*Counsel for Debtors-Appellees*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document contains 6,792 words, excluding the parts exempted by Federal Rule of Bankruptcy Procedure 8015(g), as counted by Microsoft Word.

I hereby certify that this document complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Michael J. Merchant*

Michael J. Merchant

## CERTIFICATE OF SERVICE

I certify that on June 8, 2022, I caused to be served the foregoing Brief Of

Debtors-Appellees via the CM/ECF Electronic Filing system.

*/s/ Michael J. Merchant*
Michael J. Merchant